Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARASH NIKOUGHADEM, on behalf of himself and those similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>ZAGG INC, CHERYL A. LARABEE, CHRIS AHERN, DAN MAURER, SCOTT STUBBS, MICHAEL BIRCH, RON GARRIQUES, and EDWARD TERINO,<br><br>        Defendants. | Case No.:<br><br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br>(3)  Breach of Fiduciary Duties<br>(4)  Aiding and Abetting Breach of Fiduciary Duties<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Arash Nikoughadem ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of ZAGG Inc ("ZAGG" or the "Company"), against ZAGG and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with ZAGG, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Zephyr Parent, Inc. ("Parent"), and Zephyr Merger Sub, Inc. ("Merger Sub," and collectively with Parent, "Evercel") as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $132.8 million (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 11, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K, attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Evercel will acquire all of the outstanding shares of ZAGG's common stock at a price up to $4.45 per share in cash. ZAGG stockholders will receive $4.20 per share in cash upon closing and a Contingent Value Right ("CVR") of up to $0.25 per share, to be paid if the Company's Paycheck Protection Program Loan (the "PPP Loan") is forgiven and any audit related thereto is satisfactorily completed. As a result, ZAGG will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Evercel.

3.      Thereafter, on January 7, 2020, ZAGG filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient process in which the Board acquiesced to two activist stockholder groups who forced through a sale of the Company despite the fact that the Board had previously concluded that continuing as a standalone entity was in the Company's best interest.  The two activist stockholders are (i) a consortium consisting of AREX

Capital Master Fund, LP, AREX Capital GP, LLC, AREX Capital Management, LP, AREX Capital Management GP, LLC, and Mr. Andrew Rechtschaffen (the "AREX Parties"), and Roumell Asset Management, LLC and James C. Roumell (the "Roumell Parties").

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell ZAGG without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or the Evercel without regard for ZAGG's public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to ZAGG stockholders.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on January 7, 2021 with the SEC in an effort to solicit stockholders to vote their ZAGG shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient, deprives ZAGG's stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties.  As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for ZAGG, provided by ZAGG to the Company's

financial advisor BofA Securities, Inc. ("BofA"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by BofA and provides to the Company and the Board.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## PARTIES

9. Plaintiff is a citizen of California and, at all times relevant hereto, has been an ZAGG stockholder.

10. Defendant ZAGG designs, manufactures, and distributes mobile tech accessories for smartphones, tablets, smartwatches, and other mobile technology in the United States, Europe, and internationally. ZAGG is organized under the laws of Delaware and has its principal place of business at 910 West Legacy Center Way, Suite 500, Midvale, Utah 84047. Shares of ZAGG common stock are traded on the Nasdaq under the symbol "ZAGG."

11. Defendant Cheryl A. Larabee ("Larabee") has been a Director of the Company at all relevant times. In addition, Larabee serves as the Chairperson of the Company Board.

12. Defendant Chris Ahern ("Ahern") has been a director of the Company at all relevant times. In addition, Ahern serves as the Chief Executive Officer ("CEO") of the Company.

13. Defendant Dan Maurer ("Maurer") has been a director of the Company at all relevant times.

14. Defendant Scott Stubbs ("Stubbs") has been a director of the Company at all relevant times.

15.     Defendant Michael Birch ("Birch") has been a director of the Company at all relevant times.

16.     Defendant Ron Garriques ("Garriques") has been a director of the Company at all relevant times.  Garriques was one of two directors who was placed onto the Company Board in April of 2020 as a result of the negotiations between the Company and two activist stockholders, the AREX Parties and the Roumell Parties.

17.     Defendant Edward Terino ("Terino") has been a director of the Company at all relevant times.  Terino was one of two directors who was placed onto the Company Board in April of 2020 as a result of the negotiations between the Company and two activist stockholders, the AREX Parties and the Roumell Parties.

18.     Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19.     Non-Defendant Evercel is a holding company that acquires and manages high potential businesses which have been limited by their capital structure. Evercel was founded in 1998 and is headquartered in New York, NY.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendants

conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District and ZAGG stock is traded on the NASDAQ which is located in this District.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of ZAGG common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

24.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of November 9, 2020, there were 29,848,506 shares of ZAGG common stock issued and outstanding, likely owned by hundreds if not thousands of non-affiliated ZAGG public stockholders;

b.    There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.    Whether Defendants have violated the federal securities laws;

ii.    Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Proxy;

       iii.        Whether Defendants have breached their fiduciary duties; and

       iv.        Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.      Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

25.      By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with ZAGG and owe the Company the duties of due care, loyalty, and good faith.

26.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with ZAGG and owe the Company the duties of due care, loyalty, and good faith.

27.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.    act with the requisite diligence and due care that is reasonable under the circumstances;

b.    act in the best interest of the company;

c.    use reasonable means to obtain material information relating to a given action or decision;

d.    refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.    avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.    disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company

28.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of ZAGG, are obligated to refrain from:

a.      participating in any transaction where the directors' or officers' loyalties are

divided;

b.      participating in any transaction where the directors or officers are entitled

to receive personal financial benefit not equally shared by the Company or its public

stockholders; and/or

unjustly enriching themselves at the expense or to the detriment of the Company or

its stockholders

29.     Plaintiff alleges herein that the Individual Defendants, separately and together, in

connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they

owe to ZAGG, Plaintiff and the other public stockholders of ZAGG, including their duties of

loyalty, good faith, and due care

30.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class

members will not receive adequate, fair or maximum value for their ZAGG common stock in the

Proposed Transaction.

## **SUBSTANTIVE ALLEGATIONS**

### *Company Background*

31.     ZAGG, together with its subsidiaries, designs, manufactures, and distributes mobile

tech accessories for smartphones, tablets, smartwatches, and other mobile technology in the United

States, Europe, and internationally.

32.     The Company offers screen protection products; protective cases to protect device-

specific mobile devices and tablets; power management products for tablets, smartphones,

smartwatches, cameras, and other electronic mobile devices; power stations, wireless chargers, car

and wall chargers, portable power products, power wallets, etc.; earbuds, headphones, and

speakers; and device-specific keyboards and device-agnostic keyboards under the ZAGG, InvisibleShield, mophie, IFROGZ, BRAVEN, Gear4, and HALO brands. It sells its products through indirect channels, including big box retailers, wireless retailers, domestic and international distributors, independent Apple retailers, university bookstores, and small independently owned consumer electronics stores, as well as directly to retailers or through distributors; and directly to consumers on its Website at ZAGG.com. The company also sells its products to franchisees that operate cellphone repair locations, kiosks, and ZAGG-branded stores in shopping malls and retail centers.

33.    The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a November 9, 2020 press release announcing its 2020 Third Quarter Financial Results, the Company reported Net Sales of $115.5 million, Gross Profit Margin of 33%, Net Income of $6.2 million, and Adjusted EBITDA of $14.7 million.

34.    Speaking on these positive results, Defendant Ahern stated, "'Our business improved meaningfully compared with the second quarter as our wholesale channel moved toward more normalized operations and demand for our portfolio of innovative mobile lifestyle products continued to increase… We have taken important steps to emerge from the pandemic a stronger company starting with discontinuing certain low margin products and categories, and simplifying other core lines of business. We have also made progress sharpening our top-line focus and advancing our digital wellness strategies. I am confident in the long-term course we have set for ZAGG and believe we are on track to generate enhanced profitability and increased value for our shareholders.'"

35.     Ahern continued in the Investor Conference Call regarding the Company's future outlook, "'I am confident in the long-term quarter we've set for the company, our efforts around antimicrobial, UV sanitization and blue light protection are driven by our belief that consumers will increasingly look for solutions that will enhance their digital wellness. We also believe another consumer priority will be increased productivity and comfort from home. We will continue our focus on enhancing technology in our lives to accomplish these growing needs... I am confident that we have taken the right steps to emerge from the pandemic as a stronger company.'"

36.     In addition to the positive financial results, in the past 52 weeks, the stock has traded as high as $9.01 per share, a value that is approximately 102.47% greater than the highest possible consideration of $4.45 per share offered in the Proposed Transaction.

37.     Despite this upward trajectory and financial promise, the Individual Defendants have caused ZAGG to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

38.     As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Evercel.

39.     First, it is clear from the Preliminary Proxy that the Board determined, after a sales process lasting approximately a year, that it was in ZAGG's best interest to continue on a standalone basis.  This determination however was apparently not palatable to both the AREX Parties and Roumell Parties who both independently delivered letters to the Board disagreeing with the decision. The Board thereafter acquiesced to these demands, and entered agreements with

the activist stockholders, which resulted in the appointment of two additional directors and the immediate resumption of the sales process that resulted in the Proposed Transaction.

40.    Next, while the Preliminary Proxy indicates a so-called "Strategic Committee" was created to run the sales process, it does not indicate what powers this committee had in relation to the sales process, or if its approval was necessary for the Company's entry into any particular strategic alternative.

41.    Moreover, the composition of the Strategic Committee is suspect given that two of its members were Defendants Garriques and Terino, the two Directors who were added as a result of the agreement resolving the activist stockholder insurrections against the Board resulting in the continuation of the sales process.

42.    In addition, the Preliminary Proxy is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including Evercel, whether these agreements differ from each other, and if so in what way.

43.    Moreover, the Preliminary Proxy fails to indicate the specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Evercel, would fall away

44.    It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

45.    On December 11, 2020, ZAGG issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

**SALT LAKE CITY, December 11, 2020** (GLOBE NEWSWIRE) – ZAGG Inc (Nasdaq: ZAGG) ("we," "us," "our," "ZAGG," or the "Company"), a leading global mobile lifestyle company, and a buyer group (the "Buyer Group") led by Evercel, Inc. ("Evercel"), today announced that they have entered into a definitive agreement pursuant to which the Buyer Group will acquire all of the issued and outstanding common stock of the Company for up to $4.45 per share in cash. Stockholders will receive $4.20 per share in cash upon closing and will be entitled to receive an additional contingent amount of up to $0.25 per share, to be paid if the Company's Paycheck Protection Program Loan (the "PPP Loan") is forgiven and any audit related thereto is satisfactorily completed. The transaction is expected to close in the first quarter of 2021. The terms of the agreement, which has been unanimously approved by the Company's Board of Directors, will be submitted for approval of the Company's stockholders.

Chris Ahern, Chief Executive Officer, commented, "We are pleased with the value this transaction delivers to our stockholders and believe this is a positive development for all of our stakeholders. We look forward to continuing to serve our customers through exceptional products and continued industry-leading innovation.

We are optimistic about our continued growth and the support that will be provided by Evercel."

"We admire the ZAGG business and its portfolio of leading mobile lifestyle brands," said Daniel Allen, CEO of Evercel. "We are excited to begin a long and successful partnership with the ZAGG team."

**Terms of the Agreement**

Under the terms of the agreement, the Company will file a proxy statement, which shall include the recommendation of the Company's Board of Directors that the Company's stockholders approve the agreement and authorize the transactions contemplated thereby. Closing of the transaction is conditioned upon stockholder approval, clearance under the Hart-Scott-Rodino ("HSR") Antitrust Improvements and other customary closing requirements.

Upon consummation of the merger, $4.20 per share will be immediately paid out to ZAGG stockholders. If the Company's loan forgiveness application is granted, other U.S. Small Business Administration conditions are met, and any related audit is satisfactorily completed, former stockholders will receive an additional payment of up to $0.25 per share based on the amount of the PPP Loan that is forgiven.

### The Inadequate Merger Consideration

46.    Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

47.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements.

48.    For example, the 52-week high for the stock was $9.01 per share just prior to the Covid-19 pandemic. When the COVID-19 global pandemic affected the market, the stock went down to $2.10 per share. Since March, however, the stock price has worked its way up to over $4.49 per share, and due to the consistent upward progression, there is no indication that the stock will not climb back to its pre-COVID success.

49.    On January 16, 2020, ZAGG announced a partnership with TESSCO Technologies, which factored into ZAGG's success before COVID-19 pandemic, "[ZAGG] today announced an exclusive partnership with TESSCO Technologies, a value-added distributor and solutions provider for the wireless industry, to distribute InvisibleShield On Demand™ (ISOD) to more than 20,000 brick-and mortar retail stores throughout the U.S. The revolutionary service—which is currently available in more than 6,000 global locations—enables retailers to cut and apply screen protection film for virtually any mobile device in minutes. This means retailers can have InvisibleShield available on the same day of any new device launch and will never again disappoint a customer because a pre-cut screen protector is unavailable. By allowing retailers to cut new screen protectors on demand, the cloud based ISOD solution helps retailers to optimize inventory levels and reduces packaging waste by approximately 96 percent."

50.    In the Investor Deck Presentation on September 5, 2020, the Company detailed its status in the U.S., representing a 43% market share of U.S. screen protection with Invisible Shield, 30% market share in U.S. wireless charging pads with Mophie, and 28% market share with U.S. external power sources with Mophie and Halo. The presentation revealed that the Company continues to diversify into new high growth categories, from cases to screen protection, to audio and keyboards. In addition, the Presentation noted Invisible Shield "kill human coronavirus and 99.99% of the most common surface bacteria," which will factor into the future success of the Company's products.

51.    Clearly, while the deal will be beneficial to Evercel it comes at great expense to Plaintiff and other public stockholders of the Company.

52.    Moreover, post-closure, ZAGG stockholders will be frozen out of any future benefit from their investment in ZAGG's bright future.

53.    It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Evercel at the expense of ZAGG public stockholders.

***Preclusive Deal Mechanisms***

54.    The Merger Agreement contains certain provisions that unduly benefit the Evercel by making an alternative transaction either prohibitively expensive or otherwise impossible. Notably, in the event of termination, the merger agreement requires ZAGG to pay up to $3 million to the Evercel and/or its affiliates, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, ZAGG must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in

combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

55.    The Merger Agreement also contains a "*Solicitation of Transactions*" provision that restricts ZAGG from considering alternative acquisition proposals by, *inter alia*, constraining ZAGG's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

56.    Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the Evercel and/or its affiliates information in order to match any other offer, thus providing the Evercel access to the unsolicited bidder's financial information and giving Evercel the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Evercel.

57.    These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

58.    Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

*Potential Conflicts of Interest*

59.     The breakdown of the benefits of the deal indicate that ZAGG insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of ZAGG.

60.     Certain insiders stand to receive significant financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction.  Significantly, the Preliminary Proxy does not provide a breakdown of these benefits.

61.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement.  Despite this the Preliminary Proxy does not provide a breakdown of these benefits.

62.     Moreover, certain employment agreements with certain ZAGG executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by ZAGG common stockholders.  Notably the Preliminary Proxy does not provide a full breakdown of these benefits.

63.     Thus, while the Proposed Transaction is not in the best interests of ZAGG stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy*

64.    On January 7, 2021, the Defendants caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading up to the Proposed Transaction*

65.    The Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy fails to disclose:

> a.    The specific reasoning as to why the sales process was restarted after the entry into the agreements with the AREX Parties and the Roumell Parties and the addition of Defendants Garriques and Terino to the Board;

> b.    The specific powers the Strategic Committee had in relation to the sales process, or if its approval was necessary for the Company's entry into any particular strategic alternative;

> c.    The specific reasoning that Defendants Garriques and Terino were allowed to sit on the Strategic Committee;

> d.    The Preliminary Proxy is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third

      parties throughout the sales process, including Evercel, whether these agreements differ from each other, and if so in what way;

e.   The Preliminary Proxy fails to indicate the specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Evercel, would fall away; and

f.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning ZAGG's Financial Projections*

66.    The Preliminary Proxy fails to provide material information concerning financial projections provided and/or adjusted by ZAGG management and relied upon by BofA in its analyses. The Preliminary Proxy discloses management-prepared financial projections for which are insufficient and/or are materially misleading.

67.    The Preliminary Proxy indicates that in connection with the rendering of BofA's fairness opinion, BofA reviewed, "certain internal financial and operating information with respect to the business, operations and prospects of ZAGG furnished to or discussed with BofA Securities by the management of ZAGG, including certain financial forecasts relating to ZAGG prepared by the management of ZAGG."

68.     Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that ZAGG management provided to the Board and BofA. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

69.     With respect to the "Company Projections" for ZAGG, the Preliminary Proxy Statement fails to include material line items for the following metrics.

      a.   Adjusted EBITDA, including the underlying metrics of earnings before stock-based compensation expense, depreciation and amortization, other expense, net, transaction costs, BRAVEN employee retention bonus, former CFO retention bonus, inventory step-up amount in connection with the acquisition of HALO, severance expense, March 2020 inventory write-down, impairment of goodwill, loss on disposal of intangible assets and equipment (loss of discontinued brands, product lines, and related product tooling), adjustments to fair value of acquisition contingent consideration, and income tax provision (benefit);

      b.   Adjusted EBITDA%;

      c.   Adjusted EBITDA Excluding One-Time Benefits/Expenses%; and

      d.   Unlevered Free Cash Flow, including the underlying metrics of stock-based compensation, taxes, change in net working capital and capital expenditures

70.     The Preliminary Proxy fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the ZAGG Company Projections.

71.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

72.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of ZAGG are unable to properly evaluate the Company's true worth, the merger consideration's true value, the accuracy of BofA's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

73.     In the Preliminary Proxy, BofA describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

74.     With respect to the *Selected Precedent Transactions Analysis* the Preliminary Proxy fails to disclose the following:

   a.  The value of each selected transaction; and

   b.  The date when each selected transaction closed

75.    With respect to the *Selected Publicly Traded Companies Analysis* the Preliminary Proxy fails to disclose the basis for the application of 2020E EV/EBITDA multiples from 2.30X to 3.90X.

76.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The terminal values for ZAGG utilized;

    b.   The line items used to calculate unlevered free cash flow;

    c.   The specific inputs and assumptions used to determine the perpetuity growth rate of (1.0%) to 1.0% applied to the terminal year cash flows;

    d.   The specific inputs and assumptions used to determine the discount rate of 10.00% to 12.50%;

    e.   ZAGG's weighted average cost of capital;

    f.   ZAGG's projected net debt as of December 31, 2020, including the underlying metrics of debt, less cash, less the amount of the PPP Loan that management of ZAGG expected to be forgiven, discounted to present value, as of December 31, 2020, using a one-year Treasury Bill rate of 0.1%; and

    g.   The number of fully-diluted shares of ZAGG common stock outstanding.

77.    With respect to the *Wall Street Analysts Price Targets*, the Preliminary Proxy fails to disclose the following:

    a.   The specific price targets used;

    b.   The identity of the Wall Street analysts used.

78.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

79.     Without the omitted information identified above, ZAGG public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.   Moreover, without the key financial information and related disclosures, ZAGG public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

80.     Plaintiff repeats all previous allegations as if set forth in full herein.

81.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

82.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in ZAGG.

83.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of ZAGG by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of ZAGG to its public stockholders.

84.     Indeed, Defendants have accepted an offer to sell ZAGG at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

85.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

86.     The Individual Defendants dominate and control the business and corporate affairs of ZAGG and are in possession of private corporate information concerning ZAGG's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of ZAGG which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

87.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

88.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of ZAGG's assets and have been and will be prevented from obtaining a fair price for their common stock.

89.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

90.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendant ZAGG

91.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

92.    Defendant ZAGG knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

93.    As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

94.    Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

95.    Plaintiff repeats all previous allegations as if set forth in full herein.

96.    Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

97.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC]

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

98.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

99.     The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

100.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

101.    The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

102.    The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide whether to vote their shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against All Individual Defendants)**

103.    Plaintiff repeats all previous allegations as if set forth in full herein.

104.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

105.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary

Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

106.   The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ZAGG's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading.   As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

107.   The Individual Defendants acted as controlling persons of ZAGG within the meaning of Section 20(a) of the Exchange Act.   By reason of their position with the Company, the Individual Defendants had the power and authority to cause ZAGG to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled ZAGG and all of its employees.   As alleged above, ZAGG is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy.   By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.      Enjoining the Proposed Transaction;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for ZAGG and obtain a transaction which is in the best interests of ZAGG and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 14, 2021                **BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*